## COURT OF GENERAL SESSIONS — NEW YORK.

### June, 1917.

## THE PEOPLE v. GEORGE L. GLISON.

(100 Misc. 354.)

DISORDERLY CONDUCT—WHAT CONSTITUTES—EVIDENCE—CRIMINAL LAW.

Evidence that defendant, a few days after the declaration of war between the United States and Germany, distributed along the line of march of a patriotic parade, in large numbers, a printed pamphlet which stated in effect that the war was decreed by the "Czars, Kings and Lords of the Money Trust" and that it was declared for the maintenance and extension of exploitation, etc., justifies a finding that such distribution was an act tending to create a breach of the peace and that defendant was properly convicted of disorderly conduct, though the evidence showed that no disorder actually occurred.

APPEAL from a judgment of the City Magistrates' Court entered on the 19th day of April, 1917, convicting the defendant of disorderly conduct.

*Frederick J. Sullivan, Deputy Assistant District Attorney,* for People.

*Harry Weinberger,* for defendant.

NOTT, J.:

It appears that on the 19th day of April, 1917, a few days after the declaration by the Congress of the United States that a state of war existed with the German government, a patriotic parade was held in the county of New York; that on the line of march of that parade the defendant went through the crowds of spectators distributing printed pamphlets, a copy of which

is marked in evidence in the case. The pamphlets stated in effect that the war was decreed by the " Czars, Kings and Lords of the Money Trust; " that it was declared for the maintenance and extension of exploitation, oppression, treachery, deception, robbery, murder and destruction. It goes on to state that the war is commanded by the blood-money accumu- lators and traitors of the country who call upon people to sacri- fice their honor and rights for the aggrandizement of their ex- ploiters, oppressors and enslavers, and the big crooks and money lords of the trusts, and that the people are to be sacrificed to the great Moloch and the glory of the Devil; and more to the same effect.

The evidence showed that the defendant distributed a large number of these circulars, but that no disorder actually occurred. He was arrested on the complaint of a person to whom he had delivered one of the circulars.

Whether a given act is disorderly, in that it *tends* to a breach of the peace, may depend largely on the time and place of its commission. This defendant could not have been con- victed on this proceeding for circulating seditious or treason- able literature (even should this circular fall under that cate- gory), providing that the circulation did not tend to public disorder.

The sole test is, did the circulation of this literature at the time and place have tendency to cause disorder? On princi- ple the case is the same as if a pacifist parade were in progress and the defendant had distributed circulars abusing and villi- fying the pacifists among their sympathizers. If a man should make a political speech among those of his own political faith abusing his opponents it would not have a tendency to disorder; but if he should make the same abusive speech in a gathering of his political opponents it might create disorder.

As these documents were circulated by the defendant at a time of great public excitement, shortly after the declaration

of war, and as the pamphlet contained gross abuse directed against the course of the nation and against those responsible for that course, and was circulated at a place where a demonstration in support of the course of the nation was being had, in my judgment the magistrate was justified in finding that the act had a tendency to cause a breach of the peace.

Judgment affirmed.