Milton Shalleck, J.
Over two and one-half years ago — on June 28, 1960 — a New York Supreme Court Justice, sitting as a Magistrate in the County of Kings, issued a warrant for the arrest of George Lincoln Rockwell, the defendant. It was returnable in this part of the court.[1]
The warrant was based on an affidavit (complaint) executed by one Lester Fahn. Both resulted from the following background facts:
Defendant, self-styled leader of the American Nazi party[2], applied for a permit to speak in Union Square Park on July 4, 1960. It was denied him by the Commissioner of Parks. He brought a proceeding under article 78 of the Civil Practice Act to review such denial. On June 22, 1960 the hearing in the proceeding was held. A disorder evolved therefrom, the New York Times of June 23, 1960 reporting that it reached “the proportions of a riot ”, occurring “ during a five minute recess when Mr. Rockwell showed up in the Rotunda for television interviews — Television cameras were tipped over and several persons were knocked to the ground — A riot call to Police Headquarters soon brought 16 patrolmen and two sergeants to the scene * * *. However, court security guards crowded around Mr. Rockwell and he was hustled into ‘ protective custody ’ in a room off the Rotunda ”.
The complaint in part recites: ‘ ‘ That on the 22nd day of June, 1960, one George Lincoln Rockwell did commit the crime of disorderly conduct in violation of Sections 720 and 722, subdivisions 1 and 2 of the Penal Law of the State of New York, in that on the 22nd day of June, 1960, in a public place, to wit: the Rotunda of the New York County Supreme Courthouse, located at Foley Square, in the Borough of Manhattan, County of New York, City and State of New York, the defendant did violate the provisions of said sections in that he did by offensive and disorderly act, conduct and language, disturb and annoy and interfere with a large number of persons present in said public place, the aforementioned Rotunda of the New York County Supreme Courthouse and did in fact disturb the peace and provoke a breach of the peace in said place, by stating openly and *647 publicly, in said place and in the presence of a large number of persons, many of whom were of the Jewish Faith, known to him to be persons of said Faith, many of whom being Jewish War Veterans of the Armed Forces of the United States, who were of the same Faith: ‘ That 80% of the Jews in the United States were traitors and all Jews were Communists; that the other 20% should be investigated. That all negroes were stooges of the Jews.’
‘ ‘ Further that said public remarks were made in full view, presence and hearing of a large number of citizens of the Jewish Faith and of the Negro Race and other Faiths and Races and that upon a number of people objecting to such scurrilous, defamatory, slanderous and false remarks, all of which defendant knew to be false, untrue and a slander of large numbers of patriotic Americans of Jewish Faith and of the Negro Race, the said defendant continued to make and repeat the above-mentioned false, derogatory, defamatory and untrue statements whereupon a breach of the peace did in fact occur in that a number of the persons therein did attempt to physically assault and restrain the said defendant, George Lincoln Rockwell, and a large number of police were required to restore order in said public place, all of which conduct was in violation of the Statute in such cases made and provided for.”
Section 720 of the Penal Law deals with disorderly conduct as a misdemeanor. It provides in part that ‘ ‘ any person who shall by any offensive or disorderly act or language, annoy or interfere with any person in any place * * * or who shall disturb or offend * * * or * * * by any disorderly act, language or display, although such act, conduct, or display may not amount to an assaut or battery shall be deemed guilty of a misdemeanor ’ ’.
Subdivisions 1 and 2 of section 722 of the Penal Law state that: ‘1 Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct: 1. Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior; 2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others ”.
Since the issuance of the warrant, defendant, according to his counsel, has never ‘ ‘ actually come in ” to the State, although “ he has flown over it.” The warrant has never been executed because of defendant’s continued absence from New York. He has. never been arraigned. He has never pleaded to the charges above set forth. He did, however, appeal to the Appellate *648 Division from the adverse decision on the review of his application for a permit to speak, eventually succeeding in the Court of Appeals (Matter of Rockwell v. Morris, 10 N Y 2d 721, decided June 9, 1961).
As for the warrant itself, defendant remained aloof for a year or so after his civil victory. Then his counsel ‘ * made a verbal motion before ” another Judge of this court to dismiss the complaint. He was advised that the question should rightfully be decided by the Supreme Court Justice who issued the warrant. But, on proper written motion before said Supreme Court Justice, the latter referred the matter back to this court on July 22, 1962, volunteering gratuitous language (in denying the motion without prejudice) that an attack “ on the sufficiency of the complaint * # * may be made there either upon a general or a special appearance. ’ ’
Defendant’s counsel alone is now before this court on papers designated as “ Notice of Motion (demurrer) ”, not originally reciting any special appearance on behalf of the defendant.[3] The impelling reasons for this procedure are stated by counsel: “ The defendant is afraid to come to New York to exercise his right to free speech. He is afraid he will be arrested. He fears bail will be set too high; that he will languish too long in durance vile; that he will be framed and that he cannot get justice in our town * * * Must the defendant subject himself to the inconvenience, expense and ignominy of arrest and imprisonment before he can attack the legality and validity of the complaint herein? ”
I summarize my reactions to, and my conclusions upon, these reasons verbally imparted more specifically to defendant’s counsel on the argument: They are unimpressive; they are fallacious; they are unsupportable. I shall not further dwell thereon. The minutes of the argument speak for themselves. At least the defendant does not now apparently fear an audience in New York despite the other statements by counsel in his moving papers that in the last encounter with the public they ‘ ‘ knocked him down, punched and kicked him in and about the face and body.’’ [4]
Three questions alone confront the court on this motion: (1) May counsel appear specially to demur? (2) Is this demurrer *649 timely brought? and (3) Is the affidavit (complaint) legally sufficient on its face to support the issuance of the warrant herein?
1. The referring Supreme Court Justice invited defendant to renew his motion in this court “ either upon a general or a special appearance.” There are two other cases which tangentially state that an attack on the sufficiency of an information may be made by special appearance.[5] (People v. Talarico, 72 N. Y. S. 2d 39, 40; Francisco v. Little Falls Dairy Co., 163 Misc. 165.)
With due deference to the learned Justices who were the progenitors of these pronouncements, I would consider their statements sui generis, to be acknowledged as having been made, but not to be followed.
Procedures in the criminal courts are governed solely by the Code of 'Criminal Procedure. It is the Bible of all legal operative methods which guide both court and counsel.. With great particularity, in many sections, each step in criminal matters is set down in minute detail. Tet no section deals with such an office as “ special appearance.” In this respect it differs from practice in civil courts which specifically recognizes such an appearance.[6] The distinction is an understandable one.
A special appearance in a civil action is interposed after the defendant in a case is apprised of the complaint against him by service thereof upon him. In that kind of proceeding he can challenge the jurisdiction of the court; but he already knows what the claim is aginst him. He can then refuse to appear generally until the question of jurisdiction is determined upon his ‘1 special appearance.”
That is not what happens in a criminal proceeding, such as the one before this court now. The court must first acquire jurisdiction over the subject matter. This is done when the complaint or information is filed (People ex rel. Mertig v. Johnston, 186 Misc. 1041[7]; People v. Lee, 151 Misc. 431).[8] But that step *650 only permits a warrant to be issued to bring the defendant before the court (Shappee v. Curtis, 142 App. Div. 155).[9] Prior to defendant’s appearance before the court either by the execution of the warrant, by voluntary appearance, by response to a summons or even an illegal arrest (People ex rel. Mertig v. Johnston, supra; People v. Perrin, 170 App. Div. 375, 377-378),[10] the defendant has not officially been notified of the charge. At the time of appearance the court, concomitantly, has jurisdiction over the person of the defendant as well.
When the defendant is brought before the court, he is arraigned. He is advised of the charge against him. Pie then pleads (Code Crim. Pro., § 321). But the court already has jurisdiction over his person and there therefore is no need for a special appearance. At the time of the arraignment he can challenge by demurrer the validity of the charges, despite a general appearance. (Code Crim. Pro., § 322.) Defendant’s right to challenge the accusations are preserved for him; he *651 obtains no greater rights by asserting a nonrecognizable “ special appearance ”, so long as he acts timely.
I conclude that the later attempt by defendant’s counsel to appear specially is of no moment.[11] It neither gives him any additional rights nor detracts from the rights defendant has to challenge the validity of the charges against him at a proper time upon a general appearance.
2. Admittedly this court does not yet have jurisdiction over the person of the defendant.[12] The warrant has not been executed. Defendant has not been arraigned; and the fact that he must have known of the charges unofficially because of the widespread publicity given them through current media of communications, is no substitute for judicial notification at an arraignment dictated by the Legislature to be the only method available. Merits of matters are still determined in legal tribunals, not in newspapers or on television. That defendant knew of the outstanding warrant is evident from the specious arguments advanced for staying out of New York. He must have been advised that since the underlying charge is for a misdemeanor the warrant could not be executed extraterritorially. He is now attempting a peripheral method which is impotent. It is not timely.
Let the defendant present himself to this court or make himself amenable to service of the outstanding process. When he is arraigned he can then make the motion now abortively attempted. (Code Crim. Pro., § 323, subd. 4; § 324.) In People v. Dill (7 Misc 2d 597, 598) the court clearly stated:
“ [A] defendant, in a Court of Special Sessions, may demur to an information * * * when it appears upon the face of the information that the facts stated do not constitute a crime (People v. Zambounis, 251 N. Y. 94).
‘1 The proper procedure to test the sufficiency of the information upon the ground (Code Crim. Pro., § 323, subd. 4): ‘ that the facts do not constitute a crime ’ is by way of demurrer. A demurrer must be interposed (Code Crim. Pro., §§ 315, 332) at the time of arraignment, or the objections are waived or precluded, except that certain objections, within the purview of *652 section 331 of the Code of Criminal Procedure, may be urged at the trial” (p. 598; emphasis supplied).
Defendant’s counsel apparently seeks solace from the emphasized portion of section 322 of the Code of Criminal Procedure: “ Both the demurrer and the plea must be put in, at the time of the arraignment, or at such other time as may be allowed to the defendant for that purpose.” (Italics added.) He perhaps believes that this is “ such other time * # * allowed to
the defendant ” to make this motion. It is a mistaken belief. The defendant cannot choose his own time. He can demur when arraigned; or if he needs more time, “ The allowance is to be made by the court ’ ’ (Matter of De Witt v. McNamee, 232 App. Div. 88,89) not taken by the defendant at his convenience. That is a function of the court which he may not usurp. ‘ ‘ Forms and procedure still have their place and purpose in the administration of the law; without them we would have chaos.” (People v. Zambounis, 251 N. Y. 94, 97.)
A case which parallels the points here in question is People v. Equitable Gas-Light Co. (5 N. Y. S. 19) arising in the Court of General Sessions of the County of New York concerning an indictment. In view of subdivision (1) of section 41 of the New York Criminal Court Act which makes the practice and procedures of County Courts applicable to misdemeanors in this court, it quite controlling. In that case the defendant attempted to do what defendant has tried here. The court said: 11 when an indictment is filed, the defendant must be arraigned thereon before the court in which it is found * * * and time must be allowed [defendant], if he requires it, to answer the indictment; and in answer to it he may either move to set it aside, or may demur or plead thereto * * * the motion to set aside must be heard at the time of the arraignment, unless for good cause the court postpone the hearing to another time” (pp. 19-20; emphasis supplied).
These, said the court, are the requirements of the Code of Criminal Procedure. They contain little differences from our present statutes.
‘ ‘ From these provisions it is apparent that * * * the motion to set aside must be made at the time of the arraignment, or at such time as the court may appoint to hear it, after the defendant is informed of the nature of the charge contained in the indictment against him, and it cannot be made at any other time. In this case the defendant has not appeared by counsel, and has not been arraigned upon the indictment, and it follows that the motion to set it aside cannot be entertained. It is true counsel have appeared, and moved to set aside the indictment; *653 but he expressly stated to the court that he appeared only for that purpose, and that he did not appear generally for the defendant, nor did the defendant appear except for the purpose of the motion. Upon this state of facts the motion to set aside the indictment must be denied (p. 20).
“ [A] defendant * * * must * * * be arraigned # * and he must be informed of the charge made against him, and be accorded an opportunity to answer, move to set it aside, demur, or plead thereto, before any further proceeding can be had ” (p. 21).
On this score, too, the motion is without merit. But I nevertheless feel that some few words should be said in connection with the complaint itself.
3. The averments of the affidavit are admitted to be true for the purposes of this motion.[13] So long as they constitute a crime, though not with the strict formality of an indictment, the- complaint must be upheld (People v. Lee, 151 Misc. 431, 433). Upon analysis, the complaint here meets the test of the statute’s violation.
It alleges offensive language by all reasonable standards. Defendant’s counsel goes even a step further. He says that “ It appears to be true that George Lincoln Rockwell does not have to utter a sound to be offensive. ” And in defense of the admitted utterances hereinabove quoted, “All he did was answer questions about his ideas, philosophy and beliefs ” stated his counsel in his argument. This, in a “ public place * * * where
those of the Jewish Faith were present ” within the knowledge of defendant, as alleged in the complaint. It further alleges the provocation of a breach of the peace by language which annoyed, disturbed and was offensive to others — all within the provisions of section 720 and subdivisions 1 and 2 of section 722 of the Penal Law.
“ [S] ection 720 of the Penal Law covers offenses which in fact threaten to disturb the peace, and as such are more grievous than those which merely tend to disturb the peace ” (People ex rel. Gieir v. McCann, 126 Misc. 609, 611) and when it in fact threatens to disturb the peace it is a misdemeanor (People ex rel. Frank v. Davis, 80 App. Div. 448, 454).
The Court of Appeals had the following to say about the effect of uttered words: ‘ ‘ We do not think that the statute [Penal Law, § 720] gauges criminality by the impressions made on an annoyed or disgruntled citizen. Common sense (and decisions
*654 like People v. St. Clair[14] and People v. Weiler [89 App. Div. 611, revd. on other grounds 179 N. Y. 46]), dictate that the language or conduct is to be adjudged to be disorderly, not merely because it offends some supersensitive or hypercritical individual, but because it is, by its nature, of a sort that is a substantial interference with (our old friend) the reasonable man. As Chief Judge Bartlett pointed out in People v. Tylkoff (212 N. Y. 197, 200), annoying language[15] (and, presumably annoying conduct) must, to be a violation of section 720, amount to a nuisance ” (People v. Harvey, 307 N. Y. 588, 592).
The rotunda of the Supreme Court, New York County is actually, as well as admittedly on this motion, a public place within the requirements of the statute.[16]
When this June 22, 1960 event occurred, times were tense because the defendant and his group had announced in advance publicly its intent to incite to riot when it applied for a permit to speak, for he was to preach race hatred and violence against particular segments of American citizens. Under such circumstances, defendant’s counsel candidly states that an “ act or speech, otherwise innocent, if it incites others to unlawful action, may be suppressed ” for “ these are restrictions on freedom of speech. One is where it creates a danger, where it is expressed to incite a riot, that is forbidden.” It is only the application of this principle which, he says, is absent here. But that is matter for defense. The legal principle must be divorced from proof upon a trial. It is sufficient that the complaint alleges enough to come within the rule of Schenck v. United States (249 U. S. 48, *655 52) wherein Justice Holmes said: “We admit that in many places and in ordinary times the defendants in saying all that was said in the circulars would have been within their constitutional rights. But the character of every act depends upon the circumstances in which it is done. Aikens v. Wisconsin, 195 U. S. 194, 205, 206. The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force. Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 439. The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent.' It is a question of proximity and degree ” (emphasis supplied).
I conclude with a parallel case. It is People v. Glison (100 Misc. 354, affd. 179 App. Div. 926). Judge Nott of the Court of General Sessions of the County of New York, wrote pointedly on this subject.
On April 19,1917, a few days after Congress declared a state of war to exist with the German government, a patriotic parade was being held. Defendant went through the crowds watching it, distributing printed pamphlets. These pamphlets declared (pp. 355-356) that the “ ‘ Czars, Kings and Lords of the Money Trust ’ ” were responsible for “ exploitation, oppression, treachery, deception, robbery, murder and destruction” and, among other things, ‘ ‘ the people are to be sacrificed to the great Moloch and the glory of the Devil; and more to the same effect.
‘ ‘ The evidence showed that the defendant distributed a large number of these circulars, but that no disorder actually occurred. He was arrested on the complaint of a person to whom he had delivered one of the circulars.” (Italics added.) The court went on:
“ The sole test is, did the circulation of this literature at the time and place have tendency to cause disorder? On principle the case is the same as if a pacifist parade were in progress and the defendant had distributed circulars abusing and villifying the pacifists among their sympathizers. If a man should make a political speech among those of his own political faith abusing his opponents it would not have a tendency to disorder; but if he should make the same abusive speech in a gathering of his political opponents it might create disorder.
“ As these documents were circulated by the defendant at a time of great public excitement, shortly after the declaration of war, and as the pamphlet contained gross abuse directed against *656 the course of the nation and against those responsible for that course, and was circulated at a place where a demonstration in support of the course of the nation was being had, in my judgment the magistrate was justified in finding that the act had a tendency to cause a breach of the peace. ’ ’
The question of “ proximity and degree ” can remain for the trial. On the present state of the record the complaint sufficiently alleges all the facts which, if proved, would convict the defendant. On this motion that is all I have to decide. Whether the People can sustain its burden in that regard must await that trial — none of which is relevant now.
For all of the foregoing reasons defendant’s motion to dismiss the complaint and to vacate the warrant issued on June 28, 1960 is denied in all respects.

. The warrant directed the police to bring the defendant “ forthwith before the Magistrate presiding at the Lower Manhattan District Magistrates’ Court.” Upon the consolidation of the courts on September 1, 1962, this division of the old Magistrates’ Court became Part 7B of the Criminal Court of the City of New York.

. See exhibits attached to the moving papers; Matter of Rockwell v. Morris (10 N Y 2d 721) and the opinions of the courts below.

. A “ supplemental memorandum of law and additional argument ” submitted weeks later for the first and only time designates defendant’s counsel as “ appearing specially.”

. But defendant did not prosecute for this despite the claimed fact that “ The culprit* are those of the 150 persons who participated in the melee, the so-called riot.”

. Although the District Attorney’s office was served with the motion papers, it has not appeared for the People herein, nor has an opposing legal memorandum been submitted. The court has done its own research.

. (Civ. Prac. Act, § 237-a.)

. “ The jurisdiction of the Magistrate’s Court over the subject matter was acquired when the information, charging the relators with unlawful assembly, was laid before it. Literally, they were then informed of the crime charged. (Shappee v. Curtis, 142 App. Div. 155, 157-158; People v. Baxter, 178 Misc. 625, 627.) * * * That court [Special Sessions] obtained jurisdiction of the subject matter and person of the relators when the information was filed. (People v. Sellaro, 178 App. Div. 27, affd. 221 N. Y. 662; People v. Perrin, 170 App. Div. 375.) [Continued on next page.] *650 [Continued from preceding page.] “ While ‘ the foundation for the jurisdiction of the magistrate ’ over the subject matter is the information, jurisdiction of the person of the defendant is acquired when he is brought before the court and charged with the offense. (People v. Baxter, 178 Misc. 625, 627, supra; People v. Portman, 139 Misc. 544; People v. Bush, 140 Misc. 59; People v. Williams, 135 Misc. 564, 565.) “It does not matter if he is arrested illegally (People v. Baxter, supra; People v. Ostrosky, 95 Misc. 104, 110), or appears voluntarily (Foster v. Smith, 10 Wend. 377, 379; People v. Yerman, 138 Misc. 272, 273), or appears in response to a summons instead of a warrant (People v. Hagan, 138 Misc. 771, 773), or is arrested illegally without a warrant (People v. Eberspacher, 79 Hun 410; People v. Iverson, 46 App. Div. 301; People v. Park, 92 Misc. 369; People v. Dennis, 132 Misc. 410, 412) " (pp. 1043-1044).

. “An information * * * is the basis for the issuance of a warrant (p. 433)”.

. “ ‘ The information is the allegation made to a magistrate that a person has been guilty of some designated crime’ (Code Crim. Proc., § 145.) It is the foundation for the jurisdiction of the magistrate. (McKelvey v. Marsh, 63 App. Div. 396.) It performs the same office that an indictment does in superior courts. (People v. Olmstead, 74 Hun 323; People v. Pillion, 78 id. 74.) The office of a warrant is to bring the person charged before the magistrate; when that is done its office is at an end. (People ex rel. Gunn v. Webster, 75 Hun, 278.)” (Italics added; pp. 157-158.)

. “ Jurisdiction of the subject-matter is based upon the authority to hear and determine offenses of the class or grade charged in the information, and is not dependent upon the facts appearing in a particular case (Hunt v. Hunt, 72 N. Y. 217, 229), and jurisdiction of respondent’s person followed and was acquired by the filing of the information and plea of not guilty thereto (People ex rel. Phillips v. Hanley [164 App. Div, 150]), and could not be affected by the illegality, if there was illegality, in the method of bringing him before the court.” (See, also, People v. Baxter, 178 Misc. 625, 627; People v. Dileo, 194 App. Div. 793, 794.)

. He states: “In the ease at bar the Special Appearance of defendant by counsel did not confer jurisdiction on the court to try the case upon its merits.”

. Counsel argues: “ Since this defendant, George Lincoln Rockwell, has as yet never been arraigned, nor has he appeared generally by attorney, this motion in the nature of a demurrer is timely now even after the lapse of two years. The court has never obtained the jurisdiction over the person of this defendant ”.

. Defendant admits in his moving papers that he did say “ that 80% of the Jews * * * stooges of the Jews” and "further” admits “every other allegation in the complaint aforesaid.”

. (90 App. Div. 239, 243, revd. on other grounds 179 N. Y. 578): “ Two things must occur to constitute the crime. One relates to the conduct of the accused, and the other to the effect of such conduct upon the complainant. There must be an annoyance to or interference with some person in a public place by act or language which is either offensive or disorderly”.

. What may be “ annoying ” in one generation may not be so in another. It depends upon the temper of the times. Thus in People v. Trumble (147 Misc. 727, 728) the court said: “All the witnesses seemed to agree as to the exact language used and the jury was justified in finding that the language was such as might cause displeasure and resentment, language which was obnoxious' to the physical and moral senses, revolting and disgusting; language which, however, in days long past was used by Fielding in a manner more humorous than insolent when he said that ‘ The landlord is a vast, comical bitch.’ ”

. “It has long been definitely settled that the words ‘any place’ as used in Section 720, must be construed as meaning any ‘public place’” People v. St. Clair, 90 App. Div. 239; People v. Whitman, 178 App. Div. 193, People v. Trumble 147 Misc. 727” (People v. Douglas, 29 N. Y. S. 2d 206, 207). It is “A place openly and notoriously public, a place of common resort; a place where all persons have a right to go and be; a place which is in point of fact public, as distinguished from private” (People v. Whitman, 178 App. Div. 193,194-195).