Milton Shalleck, J.
One of the all-too-few gratifying rewards of judicial life in these lower Criminal Courts occurs when lawyers submit well-written memoranda which provoke legal novelty. This is one of those times. For counsel for the complainant and defendant have briefed their points with good form, good argument and plausible logic. I am appreciative. Their efforts have clarified their respective claims. They have narrowed the present legal conflicts. And by their agreement on the salient facts, simplified factual findings. This is advocacy in its finest sense. With it all, however, the legal question of immunity from criminal process is difficult of resolution.
Defendant, a lawyer in, and a resident of Louisiana, was for a time during 1962 and 1963 president of A. H. Bull Steamship Co. The latter, with related companies, has been for more than two years in chapter 10 proceedings (TJ. S. Code, tit. 11, ch. 10) in the United States District Court for the Southern District of New York. The United States is the largest creditor. It made a motion in those proceedings to consolidate all the pending matters. Because of other creditors’ opposition, a trial of that application was required. The Seafarers Welfare and Vacation Plans, a creditor, was one of such objectants.
In June, 1965 two complaints and arrest warrants against this defendant were issued on the application of the complainant on behalf of Seafarers W elf are and Vacation Plans. It is alleged *772 therein that in the period during which defendant was its president, the A. H. Bull Steamship -Co. failed to pay welfare and vacation plan contributions, this constituting a misdemeanor under section 962-a of the Penal Law. In July, 1965 defendant received notice of the arrest warrants in Louisiana by mail. In the same month an Assistant United States Attorney by telephone to Baton Rouge “ informed him that the United States wanted him to come to New York to testify on behalf of the United States at the hearing ’ ’ in the bankruptcy proceedings afore-mentioned. After several long distance telephone calls arrangements were made. Defendant arrived in New York on July 15 and spent about four hours at the United States Attorney’s office reviewing the facts. The next day he was served with a subpoena by the United States Attorney’s office. A New York City police officer had the warrants for defendant’s arrest in the courtroom on July 16, 1965 while defendant was actually testifying.
The warrants were not then served since an immediate application was made before the United States District Court to grant defendant “ immunity from arrest for a period of time sufficient to permit him to return to his residence in Baton Rouge, La.”. That court stayed the execution of the arrest warrants from July 16 to July 20 and then denied the motion solely on the ground that his “ relief against the process was in the state courts ”. This proceeding was then commenced before me, the warrants never having been served. I rejected defendant’s attempt to appear specially (People v. Rockwell, 38 Misc 2d 645) but preserved the defendant’s right to contest the validity of “ the attempted service of warrants of arrest ” and his right to assert his “ immunity from any such service ” under a voluntary appearance, which was then made. He also demurred to the complaint pro forma.
The initial opposition to the present procedure will be disposed of .first, since it does not involve the merits of the application. It attacks the method used by defendant to apprise the court of his requested relief. Citing what I said in Rockwell (supra) the attorney for complainant insists that since there is no specific “provision for such a motion in the Code of Criminal Procedure ” this application will not lie. Such contention is a distortion of the holding in that case.
There, George Lincoln Rockwell had absented himself from New York’s jurisdiction for a protracted time, fearful of the service of warrants should he appear personally in New York. While he remained without the State of New York, he authorized an attorney to appear for him specially and to move to dis *773 miss the complaint on the ground that no offense or crime had been spelled out in the complaint. Thus his special appearance was attempted in connection with a contest of the merits of the information (the affidavit) alleging this violation of the law. It was then, and under such circumstances, that I held improper a special appearance, saying that a general appearance according to the code would not thwart Rockwell’s right to challenge the validity of the charges. (Rockwell, supra, p. 650.)
But that situation is not here extant. Defendant is challenging by motion not the merits of the accusations but asserting his immunity from being forced to appear generally for purposes of trial. His immunity from process, if there be immunity, is not lessened by his general appearance upon my insistence. Defendant did not accede to this procedure in order to deny or admit his guilt as to the charges against him; he did so in order to say in effect: “You have no right to have me here, whether by legal or illegal means, for I am immune from any kind of process since I came into this state voluntarily in an unrelated matter. ’ ’
I hold that jurisdiction over his person does not preclude his claim of immunity. This, regardless of what we label the motion or procedure by which the matter is brought to judicial attention. And by so doing, we do no violence to the Code of Criminal Procedure or to People v. Rockwell.
There was once a short-lived time in the development of our common law when, if there was no form which could encompass a complaint, there was no remedy. We have gone far beyond such limited view. The law is not retrogressive. We shall never return to it. Today the law is elastic enough to afford remedy wherever needed. Defendant is properly before me with a proper challenge, the United States District Court Judge having declined to pass upon it finally.
This matter can be disposed of on other grounds than that proposed by the complainant and defendant. For instance, the statute which gave rise to the arrest warrants has never had appellate sanction as to constitutionality. And with due deference and admiration for my able colleague, Judge Bloom, whose opinion in People v. Doundoulakis (38 Misc 2d 984) was followed only by another lower court (People v. Trapp, 46 Misc 2d 642) I can find ample ground on which cogent argument can be based that section 962-a of the Penal Law is unconstitutional. For after all, the statute gives to a favored group of persons the right to enforce criminally a purely civil obligation — a modern way of imprisoning for debt long since believed to be outlawed. And the guilt under said section constraining the *774 finding of crime: “Where such employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall each be guilty of a misdemeanor ” does not depend upon intent, knowledge or even awareness on the parts of the guilty ones.
“Ordinarily” said our Second Circuit in United States v. Crimmins (123 F. 2d 271, 272) “ one is not guilty of a crime unless he is aware of the existence of all those facts which make his conduct criminal. That awareness is all that is meant by the mens rea, the ‘ criminal intent ’ necessary to guilt ’ ’. Since the statute by its words abjures the complications of modern life and relationships — not only between contracting parties but between the governments (from local to Federal) and its citizens — it must be based upon a malum prohibitum concept.
In these days a statute based upon such ideas is anachronistic. It has had its place in the simpler days of life; but courts should be wary in the application of malum prohibitum principles when, with the myriad of unknown and ununderstandable laws in this space age of ours, the mere act of walking on a public highway may involve some obscure legislation relegating its victim to criminal proceedings.
So, if I were to find section 962-a unconstitutional the arrest warrants would fall and defendant exonerated from jurisdictional compulsion to stand trial. But such result would avert the basic question of immunity argued by both complainant and defendant.[1]
I shall, therefore, address myself to the main arguments. I am hopeful that the old legal saw that hard cases make bad law will be averted here.[2]
I begin with my basic belief that the long arm of the law should encompass any defendant, legally accused, and should compel him to defend on the merits. The rule that the People must prove him guilty beyond a reasonable doubt, together with other constitutional safeguards, should ordinarily suffice to protect him (Frisbie v. Collins, 342 U. S. 519, 522).
There would be less difficulty in making that basic belief apply here, if the misdemeanor were one transcending the alleged act which, but for the last sentence of section 962-a, would give rise at most to a civil action — a remedy still available. Conversely, the impulsion to deny this application would be greater if the *775 basic misdemeanor were one borne of immoral intent: an assault, an unlawful entry, compounding a crime, a conspiracy, a larceny, malicious mischief and the like. But for the purposes of this motion I can make no distinction. A misdemeanor is a misdemeanor. "Whether I agree with the law creating it or not is of no moment. My decision may not be so influenced, despite the prosecutor’s attitude (see infra).
It is admittedly firm that the general rule exempts from service of civil process during the period required for their attendance in court, witnesses and parties coming from other jurisdictions (Stewart v. Ramsay, 242 U. S. 128; New England Inds. v. Margiotti, 270 App. Div. 488, affd. 296 N. Y. 722; Thermoid Co. v. Fabel, 4 N Y 2d 494; Chase Nat. Bank v. Turner, 269 N. Y. 397, and many other cases). The rule had a valid purpose: to further the enforcement of rights by inducing, through immunity, the attendance of needed persons for judicial hearings. The privilege “ eundo, morando, et redeundo ” aided the administration of justice. From earliest times, according to “ hoary precedent” nontheless impressive today, the privilege, once applicable, was held to be absolute (Sanford v. Chase, 3 Cow. 381, 382; Seaver v. Robinson, 3 Duer 622, 624; Jenkins v. Smith, 57 How. Pr. 171, 173). But the rule is for the convenience “of the court itself” and “should be extended or withheld only as judicial necessities require ” (Lamb v. Schmitt, 285 U. S. 222, 225).
The parties here agree on two phases of the problem: That the rule applies to a voluntary appearance, and that the immunity embraces civil suits. The dichotomy starts at that point.
The complainant insists that the statement by the Court of Appeals in Netograph Mfg. Co. v. Scrugham (197 N. Y. 377, 380): “ that suitors and witnesses from abroad are privileged from liability to other criminal and civil prosecution” is gratuitous in view of the fact that the case dealt with a motion to quash civil process and that “unfortunately, this language has been picked up and parroted in a later case ’ ’ citing People v. Birnbaum (21 Misc 2d 47). The defendant urges as compelling the Birnbaum case which in turn cited not only Netograph (supra), but "Hodges" v. "Hodges" (202 Misc. 71) where a voluntary appearance in New York by a California resident to contest the question of service upon him in an annulment suit adequately protected him from a nonsupport proceeding which was in the nature of a criminal action (vide & cf.: Anonymous v. Anonymous, 24 N. Y. S. 2d 613; “James” v. “James”, 178 Misc, 1041, 1042).
*776 The fear earlier expressed by me concerning this kind of misdemeanor is justified by complainant’s emphasis that “In cases involving criminal arrest, the critical interest to be served is the general public’s safety and well-being.’’ Is section 962-a of such nature that “ the general public’s safety and well-being ” will be fostered by a compulsive trial of this defendant under the agreed statement of facts ? Or is this not basically of private concern to Seafarers Welfare and Vacation Plans ? Is this not the method legislatively donated to a private party to collect, by criminal enforcement, in this instance, $128,269.41, from a corporate employer’s president as a personal debt? Would the complainant insist on proceeding with this criminal prosecution if the defendant paid the sum demanded? In what way is “the general public’s safety” protected or its “well-being” aided by this prosecution? If my mental struggle is thus manifested, it is engendered by these questions, unanswered by the complainant. And as for the public’s interest, the fact that the District Attorney, well known for vigorous prosecution of the People’s rights, has disdained appearance in, let alone the prosecution of, this case, indicates by more than mere words or argument, that the parties have been left to their own devices as though it were a private suit between them, without the public being affected in any way.[3]
Assuming the language of Netograph and Birnbaum to be obiter, we now have before us a case which demands resolution. That there is no ruling decision to follow does not deter this court from deciding it ab initio. Obiter can be a guide, if not absolute precedent, toward that end.
The essential element, asserts the complainant, is that the appearance in New York in the Federal judicial proceedings be voluntary for immunity. The criterion is claimed to be whether ‘ ‘ the witness could not have been compelled to give testimony at the legal proceedings he is then attending ’ ’ (emphasis in original) (citing language in Barbella v. Yale, 4 Misc 2d 825, 827; McCarver v. DeMornay-Bonardi Corp., 8 Misc 2d 273). Here, however, the argument continues, the Bankruptcy Law (U. S. Code, tit. 11, § 25, subd. [a], par. [10] and § 25, subd. [b]) made defendant’s presence mandatory, since he “ could have been ordered to attend this proceeding ’ ’; but defendant, being a lawyer, ‘1 obviously knew that his attendance was compelled and therefore chose to appear before actually summoned.”
*777 Despite the Nationwide reach of the Bankruptcy Court and such cogent argument based on surmise, the facts in the agreed statement do not encompass that conclusion. The United States Attorney “ telephoned ” defendant in Louisiana “ and informed him that the United States wanted him to come to New York to testify * * * at the hearing”. Defendant requested a return call to be advised “ of the date when he would be needed ”. “ Arrangements were made ” thereafter because he was “ told * * * that he would be required to testify on July 16.” Defendant came, as complainant admits, “ under his own power ’ ’ the evening before, went quite directly to the United States Attorney’s office where “ he remained until after midnight reviewing the facts ”. A subpeena had been issued that day but served upon defendant the following day when he was to testify.
Concededly in New York without a compulsory order or subpeena (which probably could have been served) was defendant here voluntarily within the meaning of the cases? I think he was. Did the fact that the service of the subpeena while here destroy the voluntary character of his presence by preventing “ redeundo ”? I think not. The two lower court cases cited by complainant, Barbella and McCarver, if they conflict at all, must give way to the statement in Thermoid Co. v. Fabel (4 N Y 2d 494, 499) by the Court of Appeals. In that case a North Carolinian, indicted for tax fraud here in the United States Southern District Court (where his presence, without question, could have been compelled[4]) surrendered in New York “under his own power” four days after the indictment. He posted bail, left the State, returned for trial, was convicted and then served with a civil action summons as he was leaving the courthouse. The court, observing that he came here “without arrest or process or other compulsion” held that “ His appearance in New York was in fact and in law voluntary. We should therefore, on authority and principle, apply to him the immunity privilege and not the exception applicable in cases of compulsion only.” (Emphasis supplied. See, also, Kreiger v. Kreiger, 7 Misc 2d 595, affd. 272 App. Div. 880, mot. for lv. to app. den. 272 App. Div. 1053.)
The effect of the service of the subpeena after defendant’s presence in New York is minimal. It, of course, prevented him from leaving the State before testifying, but since he was here for that purpose there would be no reason sooner to leave. There apparently was nothing to gain by the United States *778 Attorney’s keeping him here after he had testified. Therefore the subpoena became functus officio. That this is so and that defendant’s freedom to leave was unincumbered by the subpoena is supported by agreed fact No. 13 that a motion was ‘ ‘ immediately brought * * * for an order granting * * * immunity from arrest for a period of time sufficient to permit him to return to his residence in Baton Rouge, La.”
Other points argued, viz.: the effect of subdivision 4 of section 618-a of the Code of Criminal Procedure and section 25 of the Civil Rights Law on this motion have been noted but are left without comment. It is unnecessary to the decision here reached, which is that the “judicial necessities require” the granting of the motion insofar as the immunity from arrest and criminal prosecution as the result of defendant’s having been in New York to testify as agreed in the statement of facts is concerned. The general appearance entered before me on July 20, 1965 is hereby vacated and annulled, and the vacatur of the warrants of arrest revoked, but execution thereof stayed with respect to the period here involved, so that the criminal proceedings shall revert to their status prior to July 15, 1965, the date on which defendant came into the State of New York. Were it otherwise, the complainant would have me become a party to a false inducement, the defendant relying upon my statement that nothing is lost by his appearing before me generally. A court does not lend itself to the improper obtaining of jurisdiction, although others may participate in the giving of jurisdiction in which the court has no part.
The immunity, which I believe should have been continued after July 20, 1965 by the Judge of the United States District Court who originally stayed the execution of the warrants, is allowed since the arm of this court is not paralyzed thereby and the ends of justice are not defeated in this cause, to paraphrase the court in Lamb v. Schmitt (285 U. S. 222, 226, supra).

. The District Attorney’s office seems disinterested in any matter before this court in Part 7B and has not appeared.

. See Judge Friendly’s opinion in Matter of Equitable Plan Co. (277 F. 2d 319, 321); “ But the rule which we must here enforce embodies the wisdom of decades and transcends the hardest case.”

. Counsel advises “that the District Attorney’s office declined service of the motion papers and advised that such office will not participate in the motion ”,

. (Fed. Rules Crim. Pro., rule 40, subd. [b].)