OPINION OF THE COURT
Frank M. Klinger, J.
The basic question presented, which I believe is of some substantial State-wide interest, is whether the disorderly con *173 duct section (Penal Law § 240.20 [2], [7]) requires the prosecution to prove that some member of the public, other than the arresting officer, was in fact inconvenienced, annoyed or alarmed by the defendant’s alleged conduct. Another interesting question presented is how much evidence must be shown to turn what would otherwise appear to be minor vehicle and traffic offenses into the penal offense of disorderly conduct.
The gravamen of the complaint is that the defendant engaged in a course of conduct consisting of racing the engine of his vehicle, a pickup truck with loud mufflers, and quickly accelerating and then quickly decelerating the vehicle, causing backfiring, spinning, squealing of tires and gravel to fly, a cloud of dust and dirt to form in the area, and in all, a great deal of noise at 1:30 a.m. in a residential neighborhood.
The questions to be determined are whether such conduct can qnd does in this case constitute disorderly conduct under Penal Law § 240.20 (2) and/or (7).
Defense counsel has very aptly cited to this court the case of People v Coleman (47 Misc 2d 355 [Broome County Ct 1965]). In that very similar case the charge was that the defendant "did accelerate the motor of said vehicle and hold the same by braking and did build up tourque and when green light showed he did peel rubber and screech the tires of said vehicle for a distance of 39 feet all with intent to create a loud noise.” (Supra, at 356.)
The Broome County Court reversed the defendant’s conviction and dismissed the information holding that:
"Here, as in the Broadbent case, the complaining witness testified that the act of the defendant was annoying to him. He infers that the defendant’s act was offensive and annoying to others as required by the statute, but no other person testified.
"Inasmuch as it is essential in a criminal case that each and every element constituting the crime be proven, it is obvious that the People have not substantiated their burden of proof. They have failed to prove beyond a reasonable doubt that the acts of the defendant were offensive to other persons.
"This court is also concerned as to whether the evidence discloses that the acts of the defendant were intentional. The noise allegedly created by the defendant might well have been the result of an unintentional act on his part. Certainly, the burden of proof as to criminal intent has not been substantiated.
*174 "Actually there is no proof that the defendant annoyed anyone. In our opinion, the acts of the appellant, as described by the arresting officer, cannot reasonably be held to have tended to such a disturbance of the tranquillity of the People of the State of New York as to have constituted 'disorderly conduct’ in violation of the Penal Law.” (Supra, at 357.)
However, this court has gone beyond reading the Coleman case (supra) and has examined the disorderly conduct section in question as it existed on the date on the Coleman decision which was May 27, 1965. That section 722 of the former Penal Law stated in pertinent part that
"Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct * * *
"2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others * * *
"5. * * * makes a noise * * * during the night time to the annoyance or disturbance of any considerable number of persons”.
The current section 240.20 disorderly conduct provides that "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof * * *
"2. He makes unreasonable noise * * *
"7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.” (Emphasis added.)
The differences in wording between the current and the former sections are in my judgment significant in two respects. First, a fair reading of the former Penal Law § 722 would appear to require an intent to breach the peace, whereas under the current Penal Law, a mere reckless creation of a public inconvenience, annoyance or alarm is a sufficient predicate for conviction. Otherwise the language "or recklessly creating a risk thereof’ would have no meaning or purpose. (Penal Law § 240.20.)
Furthermore, the former law punished a defendant who acts "in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others” who "makes a noise * * * during the night time to the annoyance or inconvenience of any considerable number of persons”. (Former Penal Law § 722 [2], [5]; emphasis added.)
*175 It follows therefore that the former section was properly construed as holding that a defendant could not be convicted of the violation of disorderly conduct, absent proof that one or more persons, other than the arresting officer, heard the noise or were annoyed, offended or disturbed by the conduct in question.
Thus, People v Broadbent (20 Misc 2d 547, 548 [Oneida County Ct 1959]) held that an information in which the complainant merely charged that a defendant by blowing the horn of his vehicle for a distance of about 100 feet engaged in a breach of the peace which "did annoy and be offensive to myself” was in fact insufficient since subdivision (2) of section 722 of the former Penal Law required that the act must be offensive to others (emphasis in the original decision).
To the same effect is People v Trumbul (63 NYS2d 720, 722 [Magis Ct, Borough of Queens 1946]), also cited by defendant, in which the court ruled that acts which annoyed the police but for which there is no evidence that any other persons were annoyed were not prohibited under that section.
The current section 240.20 (2) which prohibits the making of "unreasonable noise” with intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof has been specificálly held to be constitutional by the Court of Appeals in People v Bakolas (59 NY2d 51).
Is there a valid reason for this change in language? Common sense tells us that there is. Given a situation in which a defendant is making unreasonable noise or engaging in a disturbing course of conduct in a residential neighborhood at night which would very likely cause inconvenience, annoyance or alarm to persons sleeping or attempting to sleep or rest in their homes, what should be the proper course of action by a police officer? Under the old statute the officer could not make a valid arrest, since at the time the officer would be the only person to have observed the conduct. Indeed, in order to make such a valid arrest, the officer would have to go door to door pounding on doors and disturbing and awakening people in the process in order to determine if they had been disturbed by the defendant’s conduct! Upon finding some that were so disturbed, and if the defendant had fortuitously remained on the scene, the officer could then proceed to make the arrest.
Such a situation in this court’s view is certainly not one with which our Legislature would have been comfortable and the rewording of the statute must properly be interpreted so *176 as to allow a conviction for disorderly conduct when the defendant creates a risk of public inconvenience, annoyance or alarm by making unreasonable noise or creating a hazardous or physically offensive condition by any act which serves no legitimate purpose in a residential neighborhood during late night hours, without the need for law enforcement officials to themselves disturb the neighbors in order to determine whether or not they had been inconvenienced, annoyed or alarmed by the defendant’s conduct.
The question yet remains whether or not this defendant is guilty of violating the particular subdivision (7) under which he has been charged. The defendant is charged with the creation of a hazardous or physically offensive condition by any act which serves no legitimate purpose. The "hazardous or physically offensive condition” would apparently have to consist of 1 or both of 2 elements: the dust, debris and dirt which went flying on Turrell Street and/or the general noise which the defendant’s vehicle was making.
As to the first, I have a problem with the following dialogue on cross-examination by defense counsel:
"Q. And how would you describe pavement on Turrell Street on that day?
"A. As I stated before, there is dirt on it, there was rocks littered here and there.
"Q. Dirt and rocks?
"A. Yes
"Q. It was this dirt that you saw going flying?
"A. Yes, debris, dust.”
If in fact Turrell Street was so littered with dirt, dust, debris and rocks, it would seem only logical that such dirt, dust, debris and even rocks would go flying if anyone drove a vehicle upon the street at or near the speed limit. The officer stated that the defendant was traveling at approximately 25 to 30 miles per hour. The speed limit was 30 miles per hour. We would at least like to believe that a motorist who intentionally or otherwise chooses to drive his vehicle upon a street open to the public which, it turns out, is littered with dirt and debris (which incidently would not likely be very visible at 1:29 a.m., the time in which the incident occurred) does not thereby risk a charge of disorderly conduct punishable by up to 15 days in jail should the dirt, gravel and debris happen to fly, which can reasonably be expected, as the car drives by.
The remaining alleged "disorderly conduct” consists of the *177 excessive noise made by this vehicle allegedly spinning (I gather squealing) its tires and accelerating and decelerating while not exceeding the speed limit, which noise it appears would have been caused by what the officer described as either "custom mufflers or bad mufflers”.
Defendant, however, was not charged with an inadequate muffler. Certainly a motorist who drives from one end of a small city such as Oswego to the other with an inadequate muffler, even during night hours, does not thereby become guilty of disorderly conduct. The offense of inadequate muffler is specifically prohibited and dealt with by the Vehicle and Traffic Law, not the Penal Law.
Indeed section 240.20 (7) is not a general catchall intended whereby a person who may properly be charged with violations of other subdivisions of disorderly conduct, other provisions of the Penal Law and in particular violations of various sections of the Vehicle and Traffic Law may instead be charged thereunder.
If a motorist who accelerates and decelerates within the speed limit a vehicle with a loud muffler may be charged with disorderly conduct for creating a hazardous or physically offensive condition by an act which serves no legitimate purpose, then so may a motorist who speeds, and so may a motorist who fails to stop or yield the right-of-way, especially if an accident results. Certainly, virtually all motorists charged with driving while intoxicated or reckless driving could then be charged with disorderly conduct as well. Little did we know that so much of our vehicle and traffic caseload could instead be charged under the Penal Law. Perhaps even persons who allow their dogs to roam free, instead of being subject to the legal maximum fine under our animal control ordinance of $25, could instead be subject to a $250 fine or 15 days in jail for creating a hazardous or physically offensive condition by an act serving no legitimate purpose. (How could the purpose be legitimate if it is in violation of the animal control law?)
Perhaps such a novel approach has merit, but the law frowns upon novel interpretations of the Penal Law to the detriment of the accused.
McKinney’s Consolidated Laws of NY, Book 1, Statutes § 271 (a) states that "Generally, penal statutes are strictly construed against the State and in favor of the accused.”
I do not think there is much doubt that the overly broad, *178 somewhat vague section 240.20 (7), which incidently leaves a good deal of ambiguity as to the question of what constitutes an undefined "physically offensive condition”, can be applied in such a manner as to render clearly defined vehicle and traffic infractions, violations of the penal provisions of "disorderly conduct” as well.
However, if, as may well have occurred here, a given defendant’s operation of a motor vehicle does in fact result in "unreasonable noise” for some extensive period of time under the circumstances manifesting an apparent intent to create public inconvenience, annoyance or alarm, or at the very least a reckless disregard thereof, well above and beyond that which could be attributed to the ordinary operation of a vehicle with an inadequate exhaust, then a given defendant may well be guilty of violation of section 240.20 (2). In this case although it is apparent that this defendant’s conduct of squealing his tires and continually accelerating and decelerating his vehicle in the same residential neighborhood occurred for some period of time, there was unfortunately no testimony as to precisely how long this incident took. One minute? Five minutes? Ten minutes? A half an hour? Although not dispositive in any way we note that the officer upon observing the entire course of conduct chose not to ticket the defendant for any violation, but simply to follow him. Thereafter a verbal altercation occurred between defendant and the officer which resulted in the officer charging the defendant for the preceding incident.
But since the statute does not require a definite length of time for the incident to have occurred, why should we? Simply because by defining how long the defendant engaged in this conduct we would certainly be able to say beyond any reasonable doubt that the defendant’s conduct rose to a level well in excess of that which would constitute a simple "ordinary” violation of inadequate exhaust.
However, even such testimony as we have makes it readily apparent that the incident was of some substantial continuing duration and may be enough to justify a conviction under section 240.20 (2). Indeed the only residuum of culpable conduct attributable to the defendant which has been established pertains to his making of "unreasonable noise” (Penal Law § 240.20 [2]).
It is, however, a fundamental right of American due process, which was modified only marginally by CPL 300.50 *179 pertaining to submission by a court to a jury of lesser included counts, that a defendant may not be convicted of an offense for which he had not been charged. This defendant was not charged with a violation of Penal Law § 240.20 (2). Even so, might not the making of unreasonable noise also constitute a physically offensive condition serving no legitimate purpose?
Generally, McKinney’s Consolidated Laws of NY, Book 1, Statutes § 271 (e) tells us that "The prohibition of a statute which is penal in nature may not be extended to doubtful situations, particularly by a strained and forced construction thereof, and every reasonable doubt concerning the meaning of the statute should be resolved in favor of the defendant. Thus, if there is a reasonable doubt whether a penal statute applies to a particular case, the party of whom the penalty is claimed should have the benefit of it. In other words that interpretation should be given conflicting provisions of a penal statute which best protects the rights of a person charged with an offense.”
More particularly, McKinney’s Consolidated Laws of NY, Book 1, Statutes § 238 states that: "Whenever there is a general and a particular provision in the same statute, the general does not overrule the particular but applies only where the particular enactment is inapplicable.”
The particular prohibition on unreasonable noise is applicable under Penal Law § 240.20 (2) which would appear to make the general catchall subdivision (7) inapplicable to unreasonable noise.
Right on point to this issue is People v Mobil Oil Corp. (48 NY2d 192, 199-200 [1979]) in which our highest court, the Court of Appeals, spoke with reference to a Westchester County ordinance as follows: "When sections 3 and 4 are considered together and together with section 5 (which makes violation of either section 3 or section 4 an offense), section 3 cannot be construed as aimed at deception. What section 3 proscribes is the posting on or near premises where gasoline is sold of a sign referring to the price of gasoline or diesel fuel. What section 4 proscribes is deceit or tendency to deceive as to price, among other things, in offering for sale in any manner gasoline or diesel fuel * * * Construing the entire law as a whole and bearing in mind the rule that a general provision of a statute applies only where a particular provision does not (Hoey v Gilroy, 129 NY 132; People ex rel. Davidson v Gilon, 126 NY 147; see McKinney’s Cons Laws of NY, Book 1, *180 Statutes, §238) and that the statutes enacting regulations malum prohibitum are to be strictly construed (State of New York v Mobil Oil Corp., 38 NY2d 460, 466; Matter of Asheroff v Parking Violations Bur. of Transp. Admin. of City of N. Y., 38 AD2d 474, 477; see McKinney’s Cons Laws of NY, Book 1, Statutes, § 271), we conclude that section 3 is not aimed at the possibility of deception through the posting of a sign referring to the price of gasoline because section 4 is. ” (Emphasis added.)
Here, I must and do conclude that Penal Law § 240.20 (7) is not aimed at "unreasonable noise” because subdivision (2) is.
I must therefore and do hereby find the defendant not guilty of the alleged violation of section 240.20 (7).