*51 OPINION OF THE COURT
James C. Harberson, J.

PEOPLE V BARBARA BLANCHETTE

FACTS
At 3:00 a.m. on December 30, 1989 the defendant was seated in a restaurant in Watertown, New York. The defendant in particular was advised to quiet down because of her loud voice and use of the word "fuck”. She refused the request of the owner and his waitress to quiet down and continued annoying them and the other customers in the restaurant.
The police were summoned and when they arrived the defendant again refused their request to leave using a loud voice and various vulgarities all of which continued to annoy the large number of patrons in the diner. At that point the defendant was arrested and charged with a violation of Penal Law § 240.20 (3).

PEOPLE v MICHAEL CROSS

FACTS
At 1:15 p.m. on December 19, 1989 the defendant was observed walking on a busy street in the City of Watertown swinging his arms and a bag he was carrying in a violent manner. The witness was driving a taxi and fearing the defendant might harm her cab or a bystander notified the cab dispatcher who in turn notified the Watertown Police. The defendant left the bag he was carrying in the middle of the street.
Officer Russell arrived on the scene a few minutes later and while talking to him was subject to a tirade of verbal abuse causing people to stop and cars to slow down. At this point, the defendant was arrested and charged with Penal Law § 240.20 (3) and § 240.25 (2) based on the complaint of the witness and the police observations. Section 240.25 (2) is dismissed on motion of District Attorney.
DECISION
Defendants move to dismiss their charges on constitutional grounds. This court is aware of the stringent circumstances imposed on it as a court of original jurisdiction when considering the constitutionality of a statute:
"Courts of original jurisdiction entertain questions regard *52 ing the constitutionality of a penal statute with the greatest reluctance (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150). Penal statutes, like all other legislative enactments, enjoy the presumption that the Legislature has investigated and found the existence of a situation which indicates the particular legislation is needed, or is in fact desirable (East N. Y. Sav. Bank v Hahn, 293 NY 622, affd 326 US 230; Matter of Van Berkel v Power, 16 NY2d 37). Therefore, a statute is presumed to pass constitutional muster, and this presumption may only be rebutted by proof presented by the party attacking the statute which demonstrates its invalidity beyond a reasonable doubt (Matter of Van Berkel v Power, supra; People v Pagnotta, 25 NY2d 333). Only in the face of such proof, and only as a last unavoidable resort, with no other option for disposing of the particular matter should a court properly strike down legislation as violative of the Constitution.
"Accordingly, while employing a measure of judicial restraint, the court considers the defendants’ instant motions.” (People v Guilbert, 122 Misc 2d 694, 695.)
The defendant’s motion to dismiss the charges against them for violation of Penal Law § 240.20 (3) is based on the decision of People v Dietze (75 NY2d 47). The Court of Appeals found Penal Law § 240.25 (2) "invalid for overbreadth, under both the State (art I, § 8) and Federal (1st & 14th Amends) Constitutions.” (People v Dietze, supra, at 50.)
Penal Law § 240.25 (2) said
"A person is guilty of harassment when, with intent to harass, annoy or alarm another person: * * *
"2. In a public place, he uses abusive or obscene language, or makes an obscene gesture”.
Penal Law § 240.20 (3) says
"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating the risk thereof: * * *
"3. In a public place, he uses abusive or obscene language, . or makes an obscene gesture”.
Dietze (supra) found that section 240.25 (2) was unconstitutional on its face without addressing the facts of the alleged crime. "Because the statute, on its face, prohibits a substantial amount of constitutionally protected expression, and because its continued existence presents a significant risk of prosecution for the mere exercise of free speech, we hold section 240.25 (2) to be invalid for overbreadth, under both the State *53 (art I, §8) and Federal (1st & 14th Amends) Constitutions.” (People v Dietze, supra, at 50.)
Chief Judge Wachtler in a concurring opinion felt there was no violation of section 240.25 (2) applying prior case law. He opined that "[t]he childish, but cruel statements uttered by defendant — calling complainant a ‘bitch’ and her son a ‘dog’— can only be considered mild by comparison and fall well outside the scope of the statute as construed by this court for more than 15 years.” (People v Dietze, supra, at 54.) The victims were a mentally retarded woman and her son who fled to the police in tears.
Chief Judge Wachtler said the majority refused to give a limiting construction to the statute because a constitutional interpretation was not "implicit” in the words used by the Legislature and to do so would leave the statute void for vagueness. Thus, such an approach in this case is precluded by the majority vote.
In a cogent opinion he offered the rebuttal that section 240.25 (2) was amendable to a limiting construction by the court as was done in Chaplinsky v New Hampshire (315 US 568) by the New Hampshire Supreme Court. Chief Judge Wachtler said that the failure to do so in Dietze by the majority because of vagueness concerns "reflects badly on the technician, not the technique.” (People v Dietze, supra, at 59.)
In making a decision to disarm victims and the law enforcement community in areas where verbal abuse is involved, a court should appreciate the context in which the Legislature intended to make such protection available: the evil to be remedied.
- The Legislature of this State was fully aware of the right of free speech guaranteed by the Federal and State Constitutions. It was also aware that no citizen should be subject to abuse of any kind in most social contexts.
The balance between freedom of speech and freedom from abuse, then, becomes a chore for the court when the constitutional promise of freedom of expression creates a situation where one’s verbal spurs to the flanks of public sensibilities go beyond a tolerable point.
The Dietze court has struck down section 240.25 (2) because "this court’s past decisions under section 240.25 (2), overturning convictions for mere vulgar speech on the ground that such expression did not come within the meaning of the statute * * * have not succeeded in halting the prosecution *54 thereunder of protected expression. * * * [I]t is now imperative that we reach the constitutional issue and * * * hold it invalid.” (People v Dietze, supra, at 53.)
In effect, then, the Dietze court has practiced a law of diminishing returns. How long will any society accept a situation where any loud mouth lout can without fear of criminal sanction verbally vomit on anyone, at anytime, for any reason under the guise of constitutional free speech? The danger in such a decision is that the freedom of speech, so important in a democratic society, could be curtailed in the inevitable backlash by enraged voters seeking to stop unacceptable levels of rudeness.
Vaclav Havel, playwrite and President of the Republic of Czechoslovakia, observed in a recent speech: "Words that electrify society with their freedom and truthfulness are matched by words that mesmerize, deceive, inflame, madden; words that are harmful, lethal even. The word as arrow.”
The Dietze decision (supra) to drop the shield against "word arrows” by section 240.25 (2), in light of the repercussions for the person on the street, invites repeating Judge Bellacosa’s recent dissenting comment about "The finely spun and bifurcated analysis of the majority may work in a cloister, but it does not work and is not warranted for the hard streets. The dangers may be 'far-fetched’ (majority opn, at 230) to Judges in the protected enclave of the courthouse, but not to cops on the beat.” (People v Torres, 74 NY2d 224, 232.)
In People v Todaro (26 NY2d 325, 330), the court said "harassment is essentially similar to * * * disorderly conduct since it involves essentially the same conduct, but is directed toward an individual rather than toward the public in general”.
There is no question that section 240.20 (3) is the twin of section 240.25 (2) in that it prohibits the same words and conduct with the identical clause. Whether the outlawing of such words or conduct is directed at an individual (as in § 240.25 [2]) it does not avoid the basic constitutional infirmity that such words and conduct, according to Dietze (75 NY2d 47, supra), cannot be proscribed by the phrase "In a public place, he uses abusive or obscene language, or makes an obscene gesture”.
The conclusion is inescapable, the rationale of Dietze (supra) applies to section 240.20 (3) beyond a reasonable doubt. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 150, at 312; *55 People ex rel. New York Cent. & Hudson Riv. R. R. Co. v Woodbury, 74 Misc 130,140.)
Thus, while this court addresses the reasoning behind the Dietze decision (supra) with the same query put to Billy Budd on the eve of his execution, "is it ignorance or is it irony?”, the decision must be that section 240.20 (3) is unconstitutional for the same reasons heretofore outlined by the Dietze court for section 240.25 (2).
The charges against the defendants Blanchette and Cross based on subdivision (3) of Penal Law § 240.20 are dismissed.