*642 OPINION OF THE COURT
James W. McCarthy, J.
The above-entitled matter comes on before this court upon a motion of the defendant by his counsel to declare Penal Law § 240.20 (3) and (7) unconstitutional in the context of this case. The defendant Dennis J. O’Leary was charged in the City of Oswego on September 19, 1991 with committing the offense of disorderly conduct in violation of Penal Law § 240.20 (3) and (7). It was alleged the defendant, "did with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof in a public place he uses abusive or obscene language, he creates a hazardous or physically offensive condition by any act which serves no legitimate purpose. To wit: The said defendant at the aforesaid time and place did continue to yell 'f_you’ while on the sidewalk in front of 200 West Seneca St. and did then kick the police car. All contrary to the provisions of the statute in such case made and provided.” The defendant through his attorney makes this motion to dismiss the section 240.20 (3) charge in light of the ruling in People v Dietze (75 NY2d 47 [1989]) in which the Court of Appeals declared section 240.25 (2) of the Penal Law (harassment) unconstitutional pursuant to NY Constitution, article I, § 8 and the Federal Constitution First Amendment guarantee of free speech. The wording in section 240.25 (2) and section 240.20 (3) (section applicable herein) is identical. Each section reads as follows: "[i]n a public place, he uses abusive or obscene language, or makes an obscene gesture”. The defendant cites in support of his contention regarding the unconstitutionality of section 240.20 (3) cases of inferior courts which resulted as an offshoot of the Dietze decision (supra). In the case of People v Perkins (147 Misc 2d 325 [1990]), the District Court of Nassau County ruled that section 240.20 (3) was unconstitutional in light of the finding in Dietze. The words used in that context were identical to the words used in the context of this case namely it was alleged that "the defendant shouted 'f_you’ and grabbed his genitals while shouting 'eat this’.” The action of the defendant "was allegedly committed while he was standing in front of approximately 100 people including the arresting officer.” (See, People v Perkins, supra, at 326.) The court in Perkins, reluctantly ruled section 240.20 (3) unconstitutional by stating "this court is constrained to rule that Penal Law § 240.20 (3) is unconstitutional and to accordingly dismiss the subject information”. (Supra, at 326.) The Perkins court noted the Dietze court ruled section 240.25 *643 (2) unconstitutional for overbreadth because it interpreted it as prohibiting a substantial amount of constitutionally protected expression and its continued existence presented a significant risk of prosecution for the mere exercise of free speech. The Perkins case, however, on appeal was reversed, the information reinstated and the case remanded for further proceedings. (People v Perkins, 150 Misc 2d 543 [App Term, 2d Dept 1991].) The Appellate Term noted the difference in the harassment statute ruled unconstitutional in Dietze (supra) and disorderly conduct in that the disorderly conduct charge is directed to the public in general or words that would tend to evoke a breach of the peace of the public in general and not a particular individual’s (harassment) sensibilities.
The defendant cites the case of People v Blanchette (147 Misc 2d 50 [1990]), in which the City Court of Watertown ruled section 240.20 (3) unconstitutional in light of the Dietze case (supra) as well. In the Blanchette case the defendant was at a public restaurant in the City of Watertown and was advised to quiet down because of her loud voice and use of the word "f_”. She refused the request of the owner and his waitress to quiet down and continued annoying them and the other customers in the restaurant. The court in that case found that "[t]here is no question that section 240.20 (3) is the twin of section 240.25 (2) in that it prohibits the same words and conduct with the identical clause. Whether the outlawing of such words or conduct is directed at an individual (as in § 240.25 [2]) it does not avoid the basic constitutional infirmity that such words and conduct, according to Dietze * * * cannot be proscribed by the phrase Tn a public place, he uses abusive or obscene language, or makes an obscene gesture’ ”. (People v Blanchette, supra, at 54.)
Yet another court on May 31, 1990 ruled section 240.20 (3) of the Penal Law unconstitutional. In the case of People v Cody (147 Misc 2d 588 [Rochester City Ct]) the court therein ruled that the defendant making an obscene statement (f_ you) to the complainant, a City of Rochester police officer, while complainant was attempting to disperse defendant and other members of striking Greyhound employees and further when the defendant said " 'f_this shit’ ”, directed at no one in particular, that section 240.20 (3) was unconstitutional. The prosecution in that case approached its argument in defense of section 240.20 (3) (and what this court believes to be the crux of the issue) — that "the disorderly conduct statute protects against public disturbances or breaches of the peace, and *644 therefore the greater public good requires that the disorderly conduct statute be upheld.” (People v Cody, supra, at 590 [emphasis added].) The Cody court found that argument unpersuasive, however, and ruled section 240.20 (3) unconstitutional, again, as being overbroad. It refused to add a limiting construction to the statute in that it found a limiting construction or saving construction was not implicit in the words chosen by Legislature.
Those decisions are all children of the case of People v Dietze (75 NY2d 47 [1989], supra) wherein the Court of Appeals ruled section 240.25 (2) (the harassment statute) unconstitutional as overbroad. The court ruled that statute unconstitutional "because its continued existence presents a significant risk of prosecution for the mere exercise of free speech” (supra, at 50). The court did this in light of the defendant’s argument that "the subdivision is unconstitutionally over-broad because its prohibitions extend to a great deal of protected speech as well as to unprotected obscenities and 'fighting words’ ” (supra, at 51 [emphasis added]). The court in regard to its statement of the possibility of proscription of just plain speech stated "[a]t the least, any proscription of pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence or other breach of the peace” (supra, at 52).
Chief Judge Wachtler writing a separate opinion (supra, at 54) concurred in the result but not in declaring the statute unconstitutional (citing People v Bacon, 37 NY2d 830 ["go f_” yourself’]; People v Sickles, 35 NY2d 792 [defendant gave "the finger”]; People v Burford, 34 NY2d 699 ["f_you”]; People v Pecorella, 32 NY2d 920 [the defendant called a police officer a "f_ing liar”]; People v Shaheen, 32 NY2d 675 ["f_ you” and "son of a bitch”]; People v Collins, 31 NY2d 878 ["all you f_ing cops are no good”]) in stating that the statute, section 240.25 (2), did not apply to language and gestures that can only be described as abusive or obscene but which are nonetheless constitutionally protected. Chief Judge Wachtler believed that the statute was amicable to a saving construction saying that it was implicit that "unless the statute provides expressly or by necessary implication that the constitutional requirements are absent, 'we may reasonably find (such requirements) implicit in the statute’ ” (People v Dietze, supra, at 55). He likewise did not concur with the majority’s opinion that if a saving or limiting construction of the statute *645 was applied to it it w¿uld result in a vagueness problem for people in general. He opined that "it would not create a problem with the kind of notice that the vagueness doctrine addresses, that is 'fair warning that * * * contemplated conduct constitutes a crime * * * [t]he problem with the statute as written is not that it fails to provide fair warning that abusive or obscene language constitutes a crime, but that it fails to provide notice that some of such language does not” (People v Dietze, supra, at 57). On the direct point which this court believes determines the outcome of the case at bar Chief Judge Wachtler said (supra, at 59) "the Supreme Court has reaffirmed both that States may constitutionally punish fighting words under narrowly drawn statutes and that the narrowing terms can be supplied by judicial construction”. This can be done if the State court’s interpretations of the statute narrow it to "fighting words”.
Therefore the analysis of the constitutionality of section 240.20 (3) must revolve around two points previously addressed herein: (1) Whether the Federal constitutional guidelines will sustain a narrowly drawn and narrowly interpreted statute proscribing only "fighting words” and (2) Whether in fact the courts of the State of New York have previously interpreted Penal Law § 240.20 (3) and its predecessor (former Penal Law § 722 [1]) to apply only to "fighting words”. It is therefore incumbent upon this court to analyze the historical context both as to the Federal implications and also the interpretations of the courts of New York regarding disorderly conduct because of the divergency in opinion as to the constitutionality of section 240.20 (3) of the Penal Law.
Federal Context — The Chaplinsky Case
In Chaplinsky v New Hampshire (315 US 568 [1942]), the United States Supreme Court rendered a decision ruling a statute of New Hampshire constitutional because of the authoritative interpretations by the Supreme Court of the State of New Hampshire which limited the construction of the statute to so called "fighting words”. The statute that was alleged to have been violated in that case was chapter 378, § 2 of the Public Laws of New Hampshire which stated: "No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him an offensive or derisive name, nor make any noise or exclamation in his presence and hearing *646 with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation”. The complaint alleged that the defendant did while on a public sidewalk address the complainant that " '[y]ou are a God damned racketeer’ and 'a damned Facist and the whole government of Rochester are Fascists or agents of Facists’ ”. (Chaplinsky v New Hampshire, supra, at 569.) The defendant upon reaching the Supreme Court maintained that the statute violated his First Amendment right as applied to the States pursuant to the Fourteenth Amendment of the Constitution as being vague and indefinite and as being effectively overbroad. The Supreme Court in referring to the applicability of the Fourteenth Amendment as affecting the right of free speech stated "allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous and the insulting or 'fighting’ words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace” (Chaplinsky v New Hampshire, supra, at 571-572). The Supreme Court in construing the constitutionality of the New Hampshire statute stated that it came to them for review construed authoritatively by the highest court of New Hampshire. The Supreme Court in reviewing the ordinance stated that the New Hampshire State court had declared that the State’s "statute’s purpose was to preserve the public peace, no words being 'forbidden except such as have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed’ * * * 'The word "offensive” is not to be defined in terms of what a particular addressee thinks * * * [t]he test is what men of common intelligence would understand would be words likely to cause an average addressee to fight * * * The English language has a number of words and expressions which by general consent are "fighting words” when said without a disarming smile * * * Such words, as ordinary men know, are likely to cause a fight’ ” (Chaplinsky v New Hampshire, supra, at 573). Chaplinsky enumerated the "fighting word” standard which is deemed the standard as to the constitutionality of ordinances regarding the prohibitions of "words” alone.
In the case of Gooding v Wilson (405 US 518), the court *647 ruled a statute of the State of Georgia unconstitutional as overbroad. The statute provided a " 'person who shall, without provocation, use to or of another, and in his presence * * * opprobrious words or abusive language, tending to cause a breach of the peace * * * shall be guilty of a misdemeanor’ ” (Gooding v Wilson, supra, at 519). The court ruled that the Georgia appellate courts had not narrowed the statute by their review of it only to "fighting words” which by their very utterance tended to incite an immediate breach of the peace. The Supreme Court in Gooding stated (supra, at 520) "it [the statute in question] can therefore withstand appellee’s attack upon its facial constitutionality only if, as authoritatively construed by the Georgia courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments” (emphasis added). The court in Gooding in reviewing the dictionary definition of opprobrious and abusive thought that they were more expansive than mere fighting words and that the appellate courts of Georgia had not limited the construction of the statute only to "fighting words”. Since the application of the statute could include constitutionally protected free speech it was overbroad and therefore unconstitutional. The court however again renewed its position that if authoritative courts of the State had reviewed the statute in question and had put a limiting construction upon it which only allowed the applicability of the statute to words or language which incited immediate breach of the peace or tended to incite a breach of the peace that it would come within the constitutional guidelines of Chaplinsky (supra). In the case of Lewis v City of New Orleans (415 US 130 [1974]), the Supreme Court ruled the City of New Orleans’ ordinance unconstitutional as overbroad and facially invalid. That statute in question read "It shall be unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.” When the case first came to the United States Supreme Court it was remanded to the Supreme Court of Louisiana for reconsideration in light of the interpretation by the United States Supreme Court in Gooding v Wilson (supra) and Chaplinsky v New Hampshire (supra). The Supreme Court of Louisiana on remand adopted a construction of the statute that " '[t]he proscriptions are narrow and specific — wantonly cursing, reviling, and using obscene or opprobrious language *648 * * * it [the statute] is narrowed to "fighting words” uttered to specific persons at a specific time’ ” (Lewis v City of New Orleans, supra, at 132). The Supreme Court of the United States however still found that the interpretation as made by the Supreme Court of Louisiana did not confine itself to strictly fighting words but could contemplate a broader reach of the ordinance to constitutionally protected speech. The court noted that the word "opprobrious” was the same word that the court in Gooding v Wilson (supra ["opprobrious”]) had reviewed in ruling the statute in Gooding unconstitutional. The court in Lewis found nothing in the opinion of the Louisiana Supreme Court that made any meaningful attempt to limit or properly define "opprobrious” to only fighting words. The court in Lewis went on to say "[i]n sum § 49-7 [statute in question] punishes only spoken words. It can therefore withstand appellant’s attack upon its facial constitutionality only if, if as authoritatively construed by the Louisiana Supreme Court, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments” (Lewis v City of New Orleans, supra, at 134).
What then can be discerned from the Federal review by the United States Supreme Court regarding the kind of statute at bar. It is ascertained that in the event the authoritative courts of the State wherein the ordinance or statute applies has construed the statute in question to only apply to words that solely tend to incite a breach of the peace and have adopted a limiting or saving construction as to that, and that limiting or saving construction is not irrational and does not apply to constitutionally protected speech, then the statute will not be unconstitutionally overbroad.
New York State Historical Context of Disorderly Conduct
We now commence review of the historical context of the disorderly conduct section at bar: section 240.20 (3) of the Penal Law and its historical antecedent section 722 (1) of the former Penal Law.
Section 722 (1) of the former Penal Law of the State of New York, the predecessor to section 240.20 (3) of the Penal Law, reads as follows:
"Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, *649 commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:
”1. Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior”.
It can be seen by the previous section 722 that disorderly conduct envisioned under section 722 must be the type which the defendant intended to provoke a breach of the peace or whereby a breach of the peace may have been occasioned. The Legislature, by its specific wording, determined that a breach of the peace must be the primary element of section 722 and that element must be established by the conduct envisioned in the confines of the statute. In the case of People v Pieri (269 NY 315 [1936]) the Court of Appeals, interpreting section 722, found the first element to be proven must be "First. The People must prove an intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned. What is a breach of the peace? Tt is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community.’ ” (People v Pieri, supra, at 321.) The court was construing subdivision (11) of section 722 at that time but the interpretation placed by the Court of Appeals was that a breach of the peace must be occasioned or be intended or be likely in order to find the defendant guilty of the offense. The court reversed the conviction but merely found that the evidence was lacking that there was an intent to breach the peace. In People v Chesnick (302 NY 58, 60-61 [1950]), once again interpreting section 722 the court stated "[w]e agree that defendant’s conduct did not rise (or fall) to the level required by the statute quoted above * * * The key phrase of the statute is 'breach of the peace’ and, traditionally, that language means a violation of public order and tranquility * * * [t]he classic definition, in modern times of 'breach of the peace’ is given by People v. Most (171 N. Y. 423, 429): Tt is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quite of the community’. 'The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility’ (Cantwell v. Connecticut, 310 U. S. 296, 308). And so, to constitute 'disorderly conduct’ there must be an actual or threatened 'breach of the peace’, which in turn means a 'disturbance of the tranquility of the People of the State.’ ” Later in the case of People v Szepansky (25 *650 Misc 2d 239 [Steuben County Ct I960]), the Honorable Domenick L. Gabrielli, County Court Judge, thereafter to be Court of Appeals Judge, reversed the Corning City Court conviction of the defendant who was convicted of section 722 (1) of the Penal Law, disorderly conduct. The facts arose from the defendant having a dispute with a police officer of the City of Corning. A verbal dispute took place but nowhere was it claimed in the information that the defendant used abusive language in that case. Defendant’s defense was that there was never any breach of the peace and that the peace and quiet of the community was not disturbed. Judge Gabrielli in interpreting section 722 (1) as applied to the facts of that case stated (supra, at 240-241): "[t]here are two elements necessary to sustain the charge here under consideration: (1) The acts must have been committed with intent to provoke a breach of the peace or whereby a breach of the peace might be occasioned; (2) the acts must have been such as to annoy, disturb, or interfere with, obstruct or be offensive to others”. Judge Gabrielli went on to state (supra, at 241) "[t]o constitute the offense of disorderly conduct there must be more than the occurrence of the forbidden acts in a public place. In addition to the occurrence in a public place, it must appear that there is a disturbance of the public order, or a causing of consternation or alarm among a substantial segment of the community, or that such a disturbance of the public peace is imminent”. The court in Szepansky (supra, at 241) reversed the conviction of the defendant and applying the then People v Chesnick (supra) standard, found that in its case there was "no evidence that the defendant’s conduct troubled 'the wonted calm of the whole community, or of any sizable segment thereof.’ (People v. Chesnick, [supra, at] 61)”. A well-written decision in the case of People v Rockwell (38 Misc 2d 645, 646 [Crim Ct, NY County 1963]) addressed the constitutional claims of George Lincoln Rockwell as to his statements being made in the rotunda of the New York County Supreme Courthouse at Foley Square, in the Borough of Manhattan that his language " 'did * * * disturb the peace and provoke a breach of the peace in said place’ ”. The Honorable Milton Shalleck viewed the. then historical context of the application of section 720 (misdemeanor charge) and section 722 (violation charge) disorderly conduct to the facts of that case. Addressing the misdemeanor section 720 constitutionality and subdivisions (1) and (2) of section 722 of the Penal Law, the violations, the court said in regard to the statements of Mr. Rockwell referred to in *651 the complaint of the officers that (supra, at 653) "it (the complaint) alleges offensive language by all reasonable standards * * * It further alleges the provocation of a breach of the peace by language which annoyed, disturbed and was offensive to others — all within the provisions of section 720 and subdivisions 1 and 2 of section 722 of the Penal Law.” The Rockwell court had the following to say about the effect of uttered words: " 'We do not think that the statute (Penal Law, § 720) gouges criminality by the impressions made on an annoyed or disgruntled citizen. Common sense (and decisions * * *), dictate that the language or conduct is to be adjudged to be disorderly, not merely because it offends some super sensitive or hypercritical individual, but because it is, by its nature, of a sort that is a substantial interference with (our old friend) the reasonable man’ ”. (People v Rockwell, supra, at 653-654.) Judge Shalleck in sustaining the information before the court and quoting the eminent jurist Oliver Wendell Holmes stated (supra, at 654-655): "[i]t is sufficient that the complaint alleges enough to come within the rule of Schenck v. United States (249 U. S. 48, 52) wherein Justice Holmes said: 'We admit that in many places and in ordinary times the defendants in saying all that was said in the circulars would have been within their constitutional rights. But the character of every act depends upon the circumstances in which it is done. Aikens v. Wisconsin, 195 U. S. 194, 205, 206. The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force. Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 439. The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger [emphasis added] that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree’ (emphasis supplied).” The Rockwell court sustained the information and relegated the question of whether the facts alleged in the information arose to a likelihood to cause a breach of the peace to the trial of the case. Applying this principle to the case at bar, it is the contextual framework in which the words are uttered which may determine whether the particular fact pattern rises to a level of a tendency to cause a breach of the peace or causes a breach of the peace. If a constitutionally protected word such as "fire” can in a certain context and *652 setting be determined to be a likelihood of causing a breach of the peace then other words may do so also, although on their face if said or made in a different setting they may be presumptively protected by the Constitution. Even an over-breadth argument would not protect a neutral word as "fire” when used in a context which would cause disturbance or likelihood of alarm or be a "clear and present danger” of causing a situation which in another context may be a breach of the peace. In 1970 the Court of Appeals in People v Todaro (26 NY2d 325), in interpreting section 240.20 (3) of the Penal Law, addressed its constitutionality. The complaint charged that the defendant " 'congregated with others in a public place, used abusive and obscene language and refused to comply with the lawful order of the [police officer] to move on after several warnings.’ ” (Supra, at 327.) At the trial, testimony was elicited that the defendant had said " 'you can’t tell us to f_g move’ ”. The defendant had been as well charged with harassment, a violation of section 240.25 (1). The Court of Appeals sustained the conviction of disorderly conduct but reversed the conviction of harassment. In sustaining the disorderly conduct conviction it stated (supra, at 329): "[o]n this record, the trial court could well have found beyond a reasonable doubt that the appellant was aware of and consciously disregarded a substantial and unjustifiable risk that 'public inconvenience, annoyance or alarm’ might result from his use of clearly 'abusive and obscene language’ in response to the officer’s repeated requests to move on and his refusal to comply with such requests * * * We merely note that appellant’s attack on the constitutionality of the statute is without merit, both as to a challenge to the statute on its face * * * and as applied to the present facts”. In the later case of People v Pritchard (27 NY2d 246 [1970]) the court analogized the predecessor statute, section 722 of the former Penal Law, with section 240.20 of the Penal Law (disorderly conduct). The point however as to the case at bar is that in interpreting the predecessor section 722 in light of the new section 240.20 the court stated (supra, at 248-249): "[t]he proscription of the statute, [§ 240.20] 'unlike the former statute (§ 722), is limited to that type of conduct which involves a genuine intent or tendency to provoke a "breach of the peace” or, to use the revisions more modern phraseology, "to cause public inconvenience, annoyance or alarm” (cf. A. L. I. Model Penal Code § 250.2).’ (Practice Commentary by Richard G. Denzer and Peter McQuillan, McKinney’s Cons. Laws of *653 N. Y., Book 39, Penal Law, § 240.20, p. 128)”. The Pritchard case therefore grafted on the interpretations heretofore had of section 722 of the former Penal Law to the new section 240.20 in regard to the necessary limiting construction or saving construction that a breach of the peace be involved in the interpretation of the statute. Even though the State Legislature had taken out the words in section 722 regarding "breach of the peace” they are implied by the construction of the courts of New York to section 240.20, i.e., that the statute to be effective against a named defendant, must have a limiting and saving construction that a breach of the peace be intended or likely to occur by the actions of the defendant. In People v Munafo (50 NY2d 326, 331, 332), the Court of Appeals again interpreted section 240.20 and stated: the "disorderly conduct [charge] was not made out beyond a reasonable doubt”, since the statute was intended to apply to situations which "become a potential or immediate public problem”. Judge Fuchsberg in rendering the opinion of the court stated (supra, at 330-331) that "Disorderly conduct is a statutory creation. Intended to include in the main various forms of misconduct which at common law would often be prosecuted as public nuisances, and modeled after the English statute which is the progenitor for most American versions of disorderly conduct legislation (5 Geo IV, ch 83), the offense first appeared in this State in local ordinances in 1883 and on a State-wide basis in 1923 (former Penal Law, § 722 * * *)”. Judge Fuchsberg in the Munafo case stated in regard to disorderly conduct that (supra, at 331) "a common thread that ran through almost all this legislation [disorderly conduct] was a desire to deter breaches of the peace or, more specifically, of the community’s safety, health or morals. * * * And, although it has always been difficult to essay any precise definition of 'breach of the peace’ * * * this court has equated that term with 'public inconvenience, annoyance or alarm’, the governing phrase of our current disorderly conduct statute (Penal Law, § 240.20, L 1965, ch 1030 * * *)” (emphasis added). Again in that case the Court of Appeals grafted onto the interpretations previously given to section 722 to section 250.20 in continuing the limiting or saving construction that to be in violation of disorderly conduct a "breach of the peace” must have been intended or have been likely to occur as a result of the actions of the defendant.
What is to be determined by this line of New York authority in regard to section 722 of the former Penal Law *654 and section 240.20 of the Penal Law? The only rational determination is that the courts of the State of New York as previously referred to herein have determined and have interpreted the predecessor section 722 (1) and presently section 240.20 (3) with a limiting construction or saving construction which they found to be implicit (albeit on the face of the statute under section 722) in the mandate of the Legislature that a breach of the peace be intended or likely to occur as a result of the defendant’s actions, whether these actions be by conduct or by word. This court therefore feels that the highest courts of New York have determined implicit in the statute as far as disorderly conduct (Penal Law § 240.20 [3]) is concerned a limiting construction that a breach of the peace must be intended to occur or likely to occur as a result of the actions of the defendant and this comports with constitutional guidelines and logically only applies to “fighting words” or words that would evoke a “breach of the peace”.
Standard To Be Used In Limiting or Saving Construction
Since this court has determined that a limiting or saving construction must be applied to include a breach of the peace or tendency to breach the peace by the actions, or conduct, or words of the defendant, we must now determine what standard to apply to words which arise to that level. The Court of Appeals has ruled regarding section 240.20 (2) (“unreasonable noise”) that that particular section was not unconstitutionally vague. (People v Bakolas, 59 NY2d 51.) The analogy is similar to the case at bar. The defendant in that case was charged with violating section 240.20 (2) (making unreasonable noise with intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof). The statute was attacked as being unconstitutionally vague and also being unconstitutionally overbroad. The Rochester City Court dismissed the subdivision (2) violation in regard to unreasonable noise finding that it depended on the ear and mind of the listener. The Court of Appeals ruled the ordinance constitutional stating that the unreasonableness of the noise (like the abusive or obscene words in this case which may be "fighting words”) would not be heard in a subjective standard of an individual but in the objective standard of the “reasonable person, under the circumstances” (People v Bakolas, supra, at 53). Directly on point was the fact the court stated that "[ajlthough the facts recited in the information involve speech, protected *655 speech may be restricted as to time, place and manner” (supra, at 55).
One might argue however that the unreasonable noise issue addressed in Bakolas (supra) does not address a constitutionally protected area namely that of freedom of speech. One may argue that the overbreadth doctrine interpretation should be strictly applied to constitutionally protected words as opposed to noise levels. The faltering point in this however is that one falls into the analogy previously used in Schenck (supra) when Justice Holmes stated a word/sound of neutral origin or in this context unoffending decibels, could become a "clear and present danger” when used in a different context. This court believes therefore that the interpretation that must be applied to the statute of disorderly conduct is not merely the words used but the context in which they are said. First, as a constitutionally protected word such as "fire” may be used in a valid fashion, it may also become a breach of the peace when used in a context which clearly shows either an intent on the defendant’s part to cause a breach of the peace or could tend to cause a breach of the peace. A court should look at the words as neutral but look at the context in which they are utilized. The standard would be that of a "reasonable man” in the same position as the complainant and defendant to determine what intent was used or meant and what effect the use of the words would have in that particular factual context and at that moment. Indeed in some cultures the words that would have an obscene or abusive connotation in a particular setting would be neutral or even common parlance in another culture. This court therefore feels that implicit in the statute of disorderly conduct is the construction that it only be applied to words that cause a breach of the peace, or intended to cause a breach of the peace, or likely to cause a breach of the peace and not to any others. If this first element is not found, on a proper motion to dismiss or on trial, the charge must be dismissed.
Application To Case At Bar
In regard to disorderly conduct (Penal Law § 240.20 [3]) as previously cited in the Schenck case (supra) and the New York State courts’ interpretations of the statute, the statute is not unconstitutional on its face. There is a limiting or saving construction that this court finds implicit in the statute and therefore the statute does pass constitutional muster.
*656 Motion In Regard To Section 240.20 (7) — Dismissal
The court likewise finds section 240.20 (7) constitutional on its face. In People v Brown (137 Misc 2d 172 [Oswego City Ct 1987]) this court determined Penal Law § 240.20 (7) does not require proof that anyone was actually physically offended; it is enough that a condition of a kind that was physically offensive to the public was created. Penal Law § 240.20 does not require proof that any member of the public actually was inconvenienced, annoyed or alarmed, it is enough that a substantial unjustifiable risk thereof was created. (People v Cooke, NYLJ, Nov. 7, 1991, at 26, col 1.) The issue is solely " 'the objective standard of public disturbance’, whether 'a reasonable person, under the circumstances, would not tolerate’ the conduct. It is an annoyance of 'a neighborhood or the public,’ or the risk thereof, that must be shown” (People v Cooke, supra, at 26, col 4).
The motions of the defendant therefore are denied and the matter is set for trial on the 5th day of May 1992.